UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

AARON HINES *and* JOSEPH JIMENEZ,

                        Defendant.

**OPINION & ORDER**

25-cr-25 (ER)

RAMOS, D.J.:

      Aaron Hines and Joseph Jiminez ("Defendants") were indicted on two counts on January 21, 2025: (1) conspiracy to distribute narcotics and (2) firearms use, carrying, and possession. Doc. 3.[1] Hines and Jiminez pled not guilty to both counts on March 19, 2025. Docs. 9, 13. On April 22, 2025, the Court so-ordered a protective order that, among other things, permitted the Government to designate certain materials as attorney's possession only material ("APO material"). Doc. 18.[2] Pending before the Court is Defendants' request to redesignate certain discovery material that has been designated as APO material by the Government. Doc. 24.[3] For the reasons set forth below, the request is DENIED.

**I.    BACKGROUND**

      The protective order, issued on April 22, 2025, restricts the handling of confidential material. Doc. 18. The protective order sets forth two categories of material: (1) disclosure material and (2) APO material. *Id.* ¶¶ 1–2. Under the protective order, "the Government's designation of material [is] controlling," and Defendants are only

---

[1] The Court notes that the case caption incorrectly misspells Joseph Jiminez's last name. The last name is Jiminez, not Jimenez. *See* Docs. 3, 19, 24.

[2] APO material is material that must remain in counsel's possession. Doc. 18 at 2. Thus, the material can only reviewed by Defendants in the presence of counsel.

[3] This request was filed by Hines, and Jiminez joins on the application. Doc. 24 at 1.

allowed to seek redesignation with the Court after the parties have conferred and been unable to resolve the dispute. *Id.* ¶ 6.

The Government has produced over 140 video recordings, designated as APO material, of undercover officers interacting with Defendants. Doc. 24 at 2; Doc. 25 at 2. The videos are each roughly 20 minutes in length, so approximately 47 hours of videos were produced. Doc. 24 at 2.

Defendants specifically request that the video recordings be redesignated as disclosure material because the APO designation "severely hampers" their ability to review the video recordings if they can only view them with their attorneys. *Id.* at 1. Although the Government does not dispute the number and length of the video recordings produced,[4] the Government responds that "there were [only] approximately 38 recorded buys" and that "the relevant portions of which are short interactions between the undercover officer and one or more of the defendants." Doc. 25 at 2.

## II.  LEGAL STANDARD

Under Fed. R. Crim. P. 16(d)(1), a court may, "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." This Rule "grants district courts the discretion to establish conditions under which the defense may obtain access to discoverable information." *United States v. Smith*, 985 F. Supp. 2d 506, 522 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). The party seeking a protective order "has the burden of showing that good cause exists for issuance of that order," and "good cause remains the standard even where parties consent to a stipulated protective order," which is the case here. *Id.* at 522–23 (internal quotation marks and citations omitted); *see also United States v. Ramirez,* No. 21-cr-41 (AJN), 2021 WL 914457, at *1 (S.D.N.Y. Mar. 10, 2021) (under Rule 16(d), "[t]he party seeking to restrict disclosure bears the burden of showing good cause") (citation omitted).

---

[4] The Government does note that "many of the videos are readily identifiable as duplicates." Doc. 25 at 2.

2

A party can demonstrate good cause for the issuance of a protective order "when a party shows that disclosure will result in a clearly defined, specific and serious injury"—such as compromising the "privacy interests of innocent third parties," causing a risk of harm to law enforcement or others, or "imped[ing] ongoing [government] investigations." *Smith*, 985 F. Supp. 2d at 518, 523–24, 530 (internal quotation marks and citations omitted); *see also United States v. Urena*, 989 F. Supp. 2d 253, 262 (S.D.N.Y. 2013) (noting that courts commonly enter Rule 16 protective orders as a "means of protecting witness identity," and that courts should take into account "the safety of witnesses and others, [or] a particular danger of ... witness intimidation") (citations omitted); *Ramirez*, 2021 WL 914457, at *1 ("The good cause standard requires courts to balance several interests, including whether dissemination of the discovery materials inflicts hazard to others [and] whether imposition of the protective order would prejudice the defendant.") (internal quotation marks and citation omitted).

## III.  DISCUSSION

At issue here are over 140 video recordings of undercover officers interacting with Defendants. Defendants argue that the designation of the videos as APO material "severely hampers" their ability to review the evidence because it "impossible for [their] counsel to provide [them] with sufficient access to" the videos. Doc. 24 at 3. Defendants further argue that the Metropolitan Detention Center's ("MDC") strict restrictions in reviewing any material under a protective order is "more than sufficient" to address any of the Government's potential concerns. *Id.*[5] The Government argues that the videos are "the most sensitive materials produced in discovery … [and] the principal materials that

---

[5] Defendants explain that "[t]o review [] material[s] [under a protective order], [an] inmate must schedule time to review it – either on designated computers kept in a segregated section of the MDC's visiting room (of which there are three or four), or on two computers that are kept in a sequestered room in the law library … [I]nmates are searched both before and after they use the computer, remain visible at all times to correction officers while reviewing the discovery, and are not allowed to share or show their computer screen to anyone. Inmates also cannot access the internet or send e-mail while using the computers." Doc. 24 at 2.

3

the [p]rotective [o]rder is designed to safeguard." Doc. 25 at 1. The Government explains that "[t]he videos' possession by MDC inmates would compromise the privacy and safety of undercover officers— those who could be identified based on these recordings, as well as other NYPD undercover officers making future purchases in the same areas and using the same techniques." *Id.* at 1–2.[6]

Here, the Court concludes that the Government has identified sufficient considerations to establish good cause for its APO material designation, specifically the privacy and safety of its undercover officers. *See, e.g.*, *United States v. Bin Laden*, No. 98-cr-1023 (LBS), 2001 WL 66314, at *1 (S.D.N.Y. Jan. 26, 2001) (approving Rule 16 restrictions on discovery material upon "credible showing of danger" to individuals); *Urena*, 989 F. Supp. 2d at 262 ("[I]t is obvious that [a protective order] would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.") (citation omitted).  In addition, Defendants' objection to the APO material designation is based on inconvenience. Although Defendants will need more of counsel's time to review the videos, inconvenience is insufficient to overcome the Government's demonstration of good cause for its APO material designation. *See United States v. Jackson*, No. 21-cr-537 (LTS), 2022 WL 582700, at *4 (S.D.N.Y. Feb. 25, 2022) ("[I]nconvenience for Defendants [to review confidential material] cannot outweigh the potential of danger to law enforcement.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' request that the Court order the redesignation of videos currently marked as APO material to disclosure material is denied. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

---

[6] The Government notes that Defendants' "suggestion that there are 140 videos with 2,800 hours of videos" to review is "misleading" and that Defendants may "review the relevant portions of the videos in their entirety in no more than a few hours." Doc. 25 at 2.

4

It is SO ORDERED.

Dated: July 28, 2025
        New York, New York

                                                 EDGARDO RAMOS, U.S.D.J.